IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

HARLEY IRVIN                                                                                    PLAINTIFF

V.                                                                    CIVIL ACTION NO. 1:19-CV-60-SA-DAS

PRENTISS COUNTY, MISSISSIPPPI, et al.                                                           DEFENDANTS

ORDER AND MEMORANDUM OPINION

On March 11, 2019, Tina Irvin, in her capacity as mother and next friend of her son, Harley Irvin, initiated this action against Prentiss County, Sheriff Randy Tolar, Deputy Sheriff Bobby Cage Potts, Deputy Sheriff Todd Knight, Deputy Sheriff Joe Carroll, and the City of Booneville.[1] On June 24, 2020, the Defendants filed a Motion for Summary Judgment [56], requesting dismissal of all claims against them. Irvin has not responded to the Motion [56], and his time to do so has passed. The Court is prepared to rule.

*Relevant Factual and Procedural Background*[2]

On March 18, 2018, Harley Irvin, an eighteen-year-old male, was arrested by the Booneville Police Department on an attempted murder charge. He was then taken to the Prentiss County Jail, where he was booked in accordance with the facility's normal procedures and placed in a cell with other inmates. Irvin initially appeared in the City of Booneville Municipal Court on March 20, 2018, at which time his bail was set at $200,000.00. Irvin was ultimately released from custody on March 26, 2018, after his bail was lowered to $100,000.00 and he was able to secure payment.

---

[1] Although Tina Irvin initially commenced this action in her capacity as Harley Irvin's mother and next friend, she was later terminated from the litigation and Harley Irvin was substituted as the sole plaintiff.
[2] The Court feels compelled to note that, although it must view the evidence in the light most favorable to Irvin at this stage in the proceedings, Irvin's failure to respond to the present Motion [56], in addition to his failure to otherwise meaningfully participate in this litigation (as explained more fully hereinafter), has undoubtedly made the Court's task in this regard more difficult.

At some point prior to his release, Irvin began experiencing abdominal pain, nausea, and diarrhea. In fact, Irvin's symptoms were so noticeable that other inmates, believing he had a stomach virus, asked the guards to move him out of their cell. Irvin was then placed in a separate cell apart from other inmates. On March 26—the same day he was released from custody, Irvin was treated by Martha Bell Shields, a licensed practical nurse employed at the Jail. According to Nurse Shields, she "saw Harley Irvin on the morning of March 26, 2018 at approximately 10:30 a.m. At that time he stated that he had vomited several times the night before. It was my understanding from speaking to him that one of his cellmates also had similar symptoms. He had no fever and reported that he had eaten some of his breakfast." [56], Exhibit 7, p. 1. Nurse Shields gave Irvin a drink and crackers and checked his temperature again an hour later. *Id*. Nurse Shields stated that she believed Irvin had the stomach virus. *Id*.

According to the Amended Complaint [7], after he was released from custody on March 26, Irvin's mother "drove [him], in extreme agony, directly to the Booneville Baptist Hospital." After initial tests indicated that Irvin had a ruptured appendix, he was transported to North Mississippi Medical Center. Further testing revealed that Irvin did in fact need surgery, and the appropriate procedure was performed that day.

On March 11, 2019, Irvin commenced this action. In the Amended Complaint [7], Irvin names as defendants: Prentiss County and the City of Booneville, as well as Sheriff Randy Tolar, Deputy Sheriff Bobby Cage Potts, Deputy Sheriff Todd Knight, and Deputy Sheriff Joe Carroll.[3] Irvin contends that the Defendants acted with deliberate indifference to his medical needs,

---

[3] Many of the Defendants were named incorrectly in the Amended Complaint [7]. For example, Prentiss County never employed anybody by the name of Joe Carroll. The Defendants believe Irvin intended to name Jo Carol Knight. Additionally, the Prentiss County Jailor's name was Kage Erikson Potts—not Bobby Cage Potts. Finally, it is believed that the reference to Todd Knight was intended to be to Todd Turner. However, each of these Defendants executed Waivers of Service. *See* Waivers of Service [14], [15], [18]. The Court will therefore set aside Irvin's error in this regard.

allegedly in violation of his Fourteenth and Eighth Amendment rights. The Amended Complaint [7] also makes a reference to the Equal Protection Clause and asserts that the Defendants failed to properly train and/or supervise jail staff. Finally, Irvin asserts a negligence claim. On November 11, 2019, the parties filed a Joint Stipulation of Dismissal [32] as to all claims against the City of Booneville, and the City was accordingly terminated as a defendant.

As further procedural background, when this action was commenced, Irvin was represented by counsel. However, on April 8, 2020, Irvin's counsel requested that the Court permit them to withdraw from the case. On April 11, 2020, Magistrate Judge Sanders entered an Order [52] granting that request and giving Irvin until May 11, 2020 to either have new counsel enter an appearance on his behalf or advise the Court of his intent to proceed *pro se*. Magistrate Judge Sanders then granted Irvin an additional two weeks to obtain counsel, extending his deadline to May 25, 2020. *See* Order [54]. After Irvin failed to obtain new counsel or indicate his intent to proceed *pro se* as directed by the Orders [52, 54], the Defendants filed the present Motion for Summary Judgment [56] on June 24, 2020. When Irvin missed his deadline to respond to the Motion [56], and after a significant period of time passed, on September 17, 2020, Magistrate Judge Sanders entered an additional Order [64], granting Irvin more time to obtain counsel and/or respond to the pending Motion for Summary Judgment [56]. Irvin still has not done so. However, considering the extensive leniency that has been granted to Irvin, the length of time that the Motion [56] has been pending, and the upcoming trial date of this matter, the Court is prepared to rule on the Defendants' Motion [56].[4]

---

[4] Pursuant to Rule 7(b)(3)(E) of this Court's Local Uniform Civil Rules, "[i]f a party fails to respond to any motion, other than a dispositive motion, within the time allotted, the court may grant the motion as unopposed." L.U. Civ. R.7(b)(3)(E). Because the Defendants' Motion [56] is a dispositive motion, the Court will not grant it as unopposed but will instead apply the customary summary judgment standard.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240 at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of Louisiana, LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As previously noted, Irvin has asserted a variety of claims, including purported violations of his Fourteenth and Eighth Amendment rights as well as state law negligence claims. Irvin sued Prentiss County, as well as several officials in both their official and individual capacities. In the present Motion [56], the Defendants contend that the federal claims must be dismissed because no constitutional violation occurred.

I. *Official Capacity Claims*

Prior to analyzing the substance of Irvin's claims, the Court will address a preliminary matter concerning the manner in which Irvin's claims were pled. All officials have been named in both their official and individual capacities.

Unlike suits against officers in their personal capacities, suits brought against officers in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y.C. Dep't of Social Svcs*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Estate of Manus v. Webster Cty., Miss.*, 2014 WL 1285946, at *2 (N.D. Miss. Mar. 31, 2014) (reversed in part on other grounds) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). Therefore, "the dismissal of allegations against municipal officers in their official capacities is proper when the allegations duplicate claims against the governmental entity itself." *Id*. (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).

Here, Irvin makes no distinction between his claims against Prentiss County and his claims against the Sheriff and the Deputy Sheriffs. In other words, his allegations against the Sheriff and

5

Deputy Sheriffs mirror his allegations against the County. Therefore, Irvin's official capacity claims are duplicative of his claims against Prentiss County and should be treated as claims against the County. As a result, the official capacity claims are dismissed.

>    II.     *Federal Municipal and Individual Capacity Claims*

Having dismissed the official capacity claims, the Court next turns to Irvin's federal claims against Prentiss County and his individual capacity claims against the other Defendants. Those claims are brought pursuant to 42 U.S.C. § 1983 for purported violations of the Fourteenth and Eighth Amendment.

"Regarding Section 1983, the United States Supreme Court has held that the statute's 'very purpose . . . was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law.'" *Alexander v. McAdams*, 2017 WL 5642328, *3 (N.D. Miss. Apr. 18, 2017) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, L.Ed.2d 705 (1972)) (emphasis omitted). To prevail on a Section 1983 claim, a plaintiff must "(1) allege he has been deprived of a right secured by the United States Constitution or the laws of the United States; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law." *Weeks v. Thompson*, 2007 WL 316261, *2 (N.D. Miss. Jan. 31, 2007) (citing *Cornish v. Correctional Services Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)).

Undoubtedly, different standards are applicable to a Section 1983 claim against a municipality and an individual capacity claim against law enforcement officers. *See Weeks*, 2007 WL 316261, at *2 ("Municipal liability under [S]ection 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom."); *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994) (holding that law enforcement

6

officers are entitled to qualified immunity "unless it is shown that, at the time of the incident, [the officer] violated a clearly established constitutional right."). Nevertheless, whether seeking to impose liability against a municipality or an individual officer, a Section 1983 plaintiff must establish that she has been deprived of a right secured by the United States Constitution or federal law. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). In other words, there can be no viable Section 1983 claim whatsoever in the absence of "a deprivation of a right secured by federal law[.]" *Id.*

Recognizing this standard, the Defendants contend that Irvin's federal claims for purported violations of the Fourteenth and Eighth Amendments should be dismissed for lack of a constitutional violation. The Court will address the purported violations in turn.

    *a. Fourteenth Amendment*

Irvin alleges that, while he was in custody, the Defendants acted with deliberate indifference to his legitimate medical concerns.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause applies to a pretrial detainee's claim of denial of medical care. *See Nickols v. Morris*, 705 F. Supp. 2d 579, 591 (N.D. Tex. 2010) (citing *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525-26 (5th Cir. 1999)); *see also Reed v. Wichita Cty.*, 795 F.3d 456, 462 (5th Cir. 2015).

"The Fifth Circuit has established that the 'deliberate indifference' standard applies to a pretrial detainee's claims involving the denial of medical care under § 1983." *Self v. City of Mansfield, Tex.*, 369 F. Supp. 3d 684, 697 (N.D. Tex. 2019) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996)). "To act with deliberate indifference, a state actor must

7

consciously disregard a known and excessive risk to the victim's health and safety." *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective and Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004). "The deliberate indifference standard is an extremely high one." *Self*, 369 F. Supp. 3d at 697 (citing *Sanchez v. Young Cty., Tex.*, 866 F.3d 274, 280 (5th Cir. 2017)).

Specifically concerning deliberate indifference in this context, "a plaintiff must show that the defendant 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Jones v. Rainey*, 2020 WL 5995688 at *1 (S.D. Miss. Oct. 9, 2020) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). And "[i]t is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Id*. Moreover, "the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, 'the failure to alleviate a significant risk that the official should have perceived, but did not' is insufficient to show deliberate indifference." *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

The Defendants contend that Irvin cannot establish deliberate indifference, relying in large part on various affidavits attached to their Motion [56]. Specifically, Deputy Jo Carol Knight, who was a correctional officer during Irvin's period of incarceration, stated:

> When Harley Irvin was incarcerated in the Prentiss County jail from March 18 to 26, 2018, I was present when he was booked in, and he was not ill. Thereafter, I was not working on March 19 or 20. I worked during the day on March 21 and 22. Harley Irvin was not sick on March 21 or 22 to my knowledge. I was off work again on March 23, 24, and 25.
>
> . . .

8

> When I came back to work on March 26, 2018, that is the first time that I was made aware that Harley was sick. He did see Nurse Shields that day and was also released that date.

[56], Exhibit 5, p. 1. Additionally, in her Affidavit, Nurse Shields explained her interaction with Irvin while he was in custody, including the medical treatment she provided to him. [56], Exhibit 7, p. 1-2. In addition to explaining the treatment provided, she noted that Irvin never stated to her that he believed he was receiving inadequate medical care, and she further testified that her concern was that Irvin had a stomach virus. *Id.* In his Affidavit, Sheriff Tolar stated:

> The extent of my knowledge of Harley Irvin's illness prior to bonding out on March 26, 2018, is that either Tina Irvin or possibly Donna Lawson, who is a friend of Tina's, called me to let me know Harley was sick and someone needed to check on him. At that time I did speak to someone on my jail staff about this and learned that the nurse had already been called to come in to check on him. The facility nurse, Martha Belle Shields, has direct contact with a supervising medical provider at any time. I was satisfied that Harley was receiving appropriate medical care and heard no further complaints.

[56], Exhibit 8, p. 1.

Relying on this evidence, the Defendants assert that "[t]he evidence here does not demonstrate deliberate indifference. To the contrary, the evidence demonstrates that (1) Harley was segregated as a precaution; (2) Harley was seen by the jail nurse and provided treatment which one would expect for a stomach virus; and (3) no person subjectively intended for any harm to come to him." [57], p. 7.

As noted above, Irvin has been given multiple opportunities, including an extensive amount of additional time, to meaningfully participate in this litigation and come forward with evidence to rebut the Defendants' contentions. However, he has failed to do so. Consequently, the Court has been provided nothing to contradict the evidence presented by the Defendants.

Therefore, analyzing the Defendants' arguments and the evidence which they have submitted, the Court finds that summary judgment should be granted on this claim. The Defendants

9

have provided competent summary judgment evidence, including but not limited to sworn proof from various individuals who have personal knowledge of the events that transpired while Irvin was in custody, indicating that Irvin received medical care while in custody. Even if Nurse Shields improperly diagnosed Irvin's condition as a stomach virus, Irvin has provided the Court nothing to indicate that this conduct was done deliberately or as part of a scheme to intentionally inflict harm upon him. *See Jones*, 2020 WL 5995688 at *1 (internal citation omitted). Further, while the Amended Complaint [7] alleges that the correctional officials unnecessarily delayed in arranging for Irvin to see Nurse Shields, those allegations have not been developed, and mere allegations alone are insufficient to thwart summary judgment. *See*, *e.g.*, *Nabors*, 2019 WL 2617240 at *1 ("Conclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial.").

Irvin has come forward with no evidence to support his claim for failure to provide adequate medical care. Summary judgment is therefore granted in the Defendants' favor.[5]

    b. *Eighth Amendment*

In addition to his Fourteenth Amendment claim, Irvin also contends that the Defendants' failure to provide adequate medical care violated the Eighth Amendment. Although the same duties to provide basic human needs are applicable under the Due Process Clause and the Eighth Amendment, pretrial detainees "are not protected by the Eighth Amendment." *Hyatt v. Thomas*,

---

[5] As previously noted, Irvin's Amended Complaint [7] also makes a vague allegation that the Defendants violated Irvin's rights under the Equal Protection Clause. "A prisoner must allege either a specific act of discrimination or offer proof of discriminatory intent by prison officials and may not rest an equal protection claim 'on only his personal belief that discrimination played a part' in the complained-of act. Conclusory claims of discrimination do not establish discriminatory intent." *Sandifer v. Tanner*, 2015 WL 4168172, *5 (E.D. La. July 1, 2015) (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995); citing *Eltayib v. Cornell Companies Inc.*, 533 F. App'x 414, 415 (5th Cir. 2013)). As asserted by the Defendants, the Court finds that Irvin has failed to satisfy this standard. He has come forward with no evidence that any of the Defendants acted with discriminatory intent toward him. His Equal Protection claims are therefore dismissed.

843 F.3d 172, 177 (5th Cir. 2016) (citing *Hare*, 74 F.3d at 650); *see also Benoit v. Bordelon*, 596 F. App'x 264, 267 n.2 (5th Cir. 2015) (noting that, while a convicted inmate's recourse is through the Eighth Amendment, a pretrial detainee is protected only by the Fourteenth Amendment).

Here, it is undisputed that Irvin was a pretrial detainee, not a convicted inmate, at the time of the purported constitutional violations. Thus, the Eighth Amendment is inapplicable, and Irvin's claims filed thereunder are dismissed.

### III. *State Law Claims*

Irvin also asserts a state law negligence claim. Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Seals v. Mississippi*, 998 F.Supp.2d 509, 526-27 (N.D. Miss. 2014). In making its determination as to whether to exercise supplemental jurisdiction, "the court is guided by the . . . statutory factors as well as the common law factors of judicial economy, convenience, fairness, and comity." *Id*. at 527 (citing *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008)). In the Fifth Circuit, "the general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial[.]" *Id*. (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prod. Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)).

In the present Motion [56], the Defendants did not request dismissal of Irvin's state law claims. The Court, however, having dismissed the federal claims and having considered the applicable factors, is inclined to decline to exercise supplemental jurisdiction over the claims. *See*,

*e.g.*, *Sahlein v. Red Oak Capital, Inc.*, 2015 WL 736340, *2 (N.D. Miss. Feb. 20, 2015) (citations omitted) ("[T]he Fifth Circuit has stated that its general rule is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial.").

However, because the Defendants did not seek dismissal of the state law claims in their Motion [56], the Court finds that Rule 56(f) of the Federal Rules of Civil Procedure is applicable. Rule 56(f) provides as follows:

> After giving notice and a reasonable time to respond, the court may:
>
> (1) grant summary judgment for a nonmovant;
> (2) *grant the motion on grounds not raised by a party*; or
> (3) *consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute*.

FED. R. CIV. P. 56(f) (emphasis added).

Although Irvin has failed to meaningfully participate in this litigation since the filing of the Amended Complaint [7], the Court will, out of an abundance of caution, grant him 21 days from today's date to file a memorandum or some equivalent filing setting forth any arguments as to why the Court should exercise supplemental jurisdiction over his state law claims. The Defendants may also file a memorandum on this issue within the same 21-day period, if they so choose. The Court hereby specifically advises Irvin that the failure to file any such memorandum may result in dismissal of his state law claims.

*Conclusion*

For the reasons set forth above, the Defendants' Motion for Summary Judgment [56] is GRANTED. All official capacity claims are dismissed *with prejudice*. All federal claims are also dismissed *with prejudice*. The Court will address Irvin's state law claims at a later date, in accordance with the directions set forth above.

SO ORDERED, this the 27th day of January, 2021.

    /s/ Sharion Aycock
UNITED STATES DISTRICT COURT JUDGE